UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNE NOEL, MICHAEL NOEL and ) <br> MICHAEL NOEL, as parent and next ) <br> friend of P.N. and M.N., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WALT DISNEY PARKS AND RESORTS ) <br> U.S., INC., ) <br> ) <br> Defendant. ) | Civil Action No. <br> 10-40071-FDS |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
AND PLAINTIFFS' MOTION TO STRIKE

This is a personal injury case arising out of an accident that occurred at a Walt Disney hotel in Florida. Plaintiffs Anne and Michael Noel allege that Mrs. Noel was severely injured when a change machine in the resort's laundry room fell onto her. Subject matter jurisdiction is based on diversity of citizenship.

Defendant Walt Disney Parks and Resorts, U.S., Inc. has moved to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. In the alternative, defendant has moved, under 28 U.S.C. § 1404(a), to transfer venue to the United States District Court for the Middle District of Florida. Plaintiffs have moved to strike a portion of an affidavit and an attached exhibit submitted with defendant's filings.

For the following reasons, defendant's motion to dismiss, as converted into a motion for

summary judgment, will be granted on the basis of an enforceable forum-selection clause. Plaintiffs' motion to strike will be denied.

## I. Background

### A. The Vacation and the Accident

Anne and Michael Noel and their children are residents of Millbury, Massachusetts. (Compl. ¶¶ 1-3). At some point, they became interested in taking a vacation to a Walt Disney resort in Florida. They viewed multiple television and newspaper advertisements for Walt Disney resorts. (Compl. ¶ 7). In response to these advertisements, Mrs. Noel investigated purchasing a Walt Disney World vacation. (Compl. ¶ 7). She visited the Walt Disney website, repeatedly called a telephone number listed on that website to obtain pricing information, contacted AAA New England (which booked Disney vacation packages), and spoke with friends. (Noel Aff. ¶ 3). She also had multiple telephone conversations with Disney employees, during which she was given "reservation/confirmation numbers" for meals and other events. (*Id.* ¶ 5). Throughout these contacts, Mrs. Noel believed that she was speaking to "Disney" employees. (*See id.* ¶ 7).

The Noels eventually booked a trip to the Disney Pop Century Resort through AAA New England. (*Id.*).[1] This vacation package had previously been sold to AAA New England by Walt Disney Travel Co., Inc. ("Disney Travel"). (Sutherland Aff. ¶ 3).[2] The Noels paid Disney Travel

---

[1] AAA New England is a Delaware corporation with its principal place of business in Providence, Rhode Island. (Sutherland Aff. ¶ 2). Its primary business is providing travel services to its members, including booking vacation packages to Walt Disney resorts and other destinations. (*Id.*). It is a "separate and distinct legal entity from [Disney Travel] and [Disney Resorts]." (*Id.* ¶ 3).

[2] Disney Travel is a Florida corporation with its principal place of business in California. (Justice Aff. ¶ 2). Its primary business activity is "purchasing airline tickets, hotel rooms, car rentals and theme park tickets from various third parties and reselling those services as vacation packages." (*Id.*). Disney Travel does not operate Disney's Pop Century Resort. (*Id.* ¶ 3).

2

directly for the vacation package but received confirmation of their reservations through AAA New England. (Noel Second Aff. ¶ 3; Lindsay Aff. ¶ 14; Justice Aff. ¶ 7). After the Noels made their final payment for the vacation, they received a booklet from AAA New England. (Noel Second Aff. ¶ 4; Sutherland Aff. ¶ 6).[3] The booklet contained, among other things, the Noels' itinerary, tickets to theme parks, brochures, and a document listing the terms and conditions applicable to the vacation package. (Noel Second Aff. ¶ 4; Sutherland Aff. ¶¶ 4, 6).

A section of the terms-and-conditions document is titled "Governing Law," and, in part, reads as follows:

> All sales of packages take place in and are consummated in the State of Florida. Reservations and bookings, all packages and services, . . . and these Terms and Conditions shall be governed by the laws of the State of Florida, without giving effect to any principles of conflicts of law. Any dispute, claim, action or proceeding ("Claims") arising out of or in connection with the packages and services and these Terms and Conditions, including but not limited to, reservations, bookings, sale or performance packages, or any products or services provided in connection with the packages, must be commenced and maintained exclusively in any court located in Orange County, Florida having jurisdiction, unless such exclusive jurisdiction is a violation of law, rule or regulation.

(Sutherland Aff. ¶ 5, Ex. A). This language was on the third of four pages in the document. (*See id.*). It was the same size font as the rest of the text in the document, but was in bold type. (*See id.*). Mrs. Noel asserts that she does not recall receiving the booklet with the terms and conditions, but does remember that her husband received a package of documents from AAA New England. (Noel Second Aff. ¶ 4). She also denies having seen the terms-and-conditions document. (Noel Aff. ¶ 12).

The resort where the Noels vacationed—the Pop Century Resort—is located in Lake

---

[3] The booklet was composed of 8½ x 11 inch sheets of paper folded in half and stapled together in the middle. (Sutherland Aff. ¶ 4).

Buena Vista, Florida. It is owned and operated by defendant Walt Disney Parks and Resorts, U.S., Inc. ("Disney Resorts"). (Compl. ¶ 12; Lindsay Aff. ¶ 3). The family arrived on March 29, 2009, and planned to stay until April 7, 2009. (Compl. ¶ 12). On April 4, Mrs. Noel brought the family's laundry to the laundry room at the resort. (*Id.* ¶ 13). As she was attempting to dislodge coins caught in a change machine in the laundry room, the machine fell on top of her. (*Id.* ¶ 24). The accident broke bones in her lower leg and left a deep gash. (*Id.*).

### B. Corporate Structure and the Activities of Disney Resorts in Massachusetts

Disney Resorts is a wholly-owned subsidiary of Disney Enterprises, Inc. (Corp. Disclosure Statement). Disney Enterprises is also the parent company of Disney Travel, which is not a defendant in this matter. *See Rooney v. Walt Disney World Co.*, 2003 WL 22937728, at *1 (D. Mass. Nov. 25, 2003). Disney Resorts and Disney Travel are distinct legal entities. (Lindsey Aff. ¶ 13; Justice Aff. ¶ 3).

Disney Resorts is incorporated in and has its principal place of business in Florida. (Lindsay Aff. ¶ 2). It owns and manages entertainment and recreational facilities in Florida and California. (*Id.*). Disney Resorts is not registered to do business in Massachusetts, and maintains no agent for service of process in the commonwealth. (*Id.* ¶¶ 4, 5). It has no offices, telephones, mailing addresses, or bank accounts in the state, nor does it own or lease any property in Massachusetts. (*Id.*). It has no agents or employees located in Massachusetts, save one who is working in the commonwealth remotely while tending to a family issue. (*Id.* ¶ 8). No travel agency located in Massachusetts is an agent of Disney Resorts or has the authority to act on its behalf. (*Id.* ¶ 9). Disney Resorts does not itself purchase local advertising in Massachusetts; all advertising for the Walt Disney World Resort is purchased by another entity, presumably also a

4

subsidiary of Disney Enterprises. (*Id.*).

**C.     Procedural Background**

On April 10, 2010, the Noels filed the present action against Disney Resorts, alleging negligence (Count I), gross negligence (Count II), loss of companionship by Michael Noel (Count III), negligent infliction of emotional distress by Michael Noel as parent of P.N. (Count IV), loss of companionship by Michael Noel as parent of P.N. (Count V), and loss of companionship by Michael Noel as parent of M.N. (Count VI).

Disney Resorts has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Alternatively, it requests that the Court transfer venue to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Plaintiffs have moved to strike three paragraphs and an exhibit from the affidavit of Scott Justice.

**II.    Standard of Review**

Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) contends that the forum-selection clause contained in the terms-and-conditions document bars this Court's consideration of the case on the merits.[4] On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). When the parties have submitted and the Court considers supplemental materials outside the pleadings, the Court must treat the motion as a motion for

---

[4] In the First Circuit, a motion to dismiss based on a forum-selection clause is analyzed as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009); *Silva v. Encyclopedia Brittannica, Inc.*, 239 F.3d 385, 387 (1st Cir. 2001).

summary judgment. *See* Fed. R. Civ. P. 12(d). In the event that the Court considers the supplemental materials through Rule 12(d)'s conversion procedure, the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*; *see Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009); *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

Plaintiffs' original complaint did not mention the forum-selection clause or the booklet of information that plaintiffs received from AAA New England. The matter was first raised in defendant's motion to dismiss, which was supplemented by several affidavits—including Scott Justice's affidavit, which included a copy of the terms-and-conditions document attached as an exhibit. In response, plaintiffs contended that they had never seen the forum-selection clause, and were not told about it by Disney representatives. (Pl.'s Opp at 14). They also submitted an affidavit attesting to those facts. (*See* Noel Aff. ¶ 12). Plaintiffs also filed a motion to strike the portions of Justice's affidavit that referenced the forum-selection clause, as well as the attached exhibit.

Defendant submitted a reply memorandum to the motion to dismiss with an additional affidavit with the terms-and-conditions document appended to it; neither that affidavit nor the authenticity of the document has been challenged by plaintiffs. (*See* Sutherland Aff. ¶¶ 4, 5, 6, Ex. A). Plaintiffs then included an additional affidavit from Mrs. Noel with their surreply memorandum. (*See* Noel Second Aff.). In it, Mrs. Noel reaffirmed that she had not seen the forum-selection clause prior to this litigation and had not seen any instructions directing her to look at the terms-and-conditions document. (*See id.* ¶ 4).

Both parties have thus had the opportunity to present evidentiary material relevant to the

forum-selection clause issue, as required by Rule 12(d). A second round of briefing was permitted, and both parties attached affidavits as evidence that they expected the Court to consider. As the Court finds this evidence relevant to consideration of the merits of the forum-selection clause issue, defendant's motion to dismiss will be converted to a motion for summary judgment pursuant to Rule 12(d). *See Rivera*, 575 F.3d at 16.

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making this determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

### III. Plaintiffs' Motion to Strike

Plaintiffs have moved to strike three paragraphs and an attached exhibit from the affidavit of Scott Justice, which was submitted with defendant's motion to dismiss, as converted to a motion for summary judgment. Justice is an assistant secretary for Disney Travel. (Justice Aff. ¶ 1). The disputed portion of his affidavit concerns the terms-and-conditions document that was included in the booklet of information that plaintiffs received from AAA New England.

Paragraph 8 of the Justice affidavit states that Disney Travel provided AAA New England

with a copy of the terms-and-conditions document, which is attached to the affidavit as Exhibit A. Paragraphs 9 and 10 of the affidavit describe the content of the terms-and-conditions document. One sentence of paragraph 8 asserts that the terms-and-conditions document, "on information and belief, [was] provided to Plaintiffs." (Justice Aff. ¶ 8).

Plaintiffs contend that Exhibit A is inadmissible hearsay, but offer no supporting explanation for this contention. *See* Fed. R. Evid. 802. They challenge paragraphs 8, 9, and 10 on the ground that Justice could not have personal knowledge as to whether or not AAA New England provided plaintiffs with the terms-and-conditions document.

As to the copy of the terms-and-conditions exhibit, it is clearly not hearsay. Defendant did not offer it to prove the truth of any matter asserted within it. *See* Fed. R. Evid. 801(c). Rather, it was offered because it bears on the legal rights of the parties, a type of evidence that does not fall within the definition of hearsay. *See Florence Nightingale Nursing Servs., Inc. v. Paul Revere Life Ins. Co.*, 1995 WL 422863, at *4 (1st Cir. 1995); Fed. R. Evid. 801(c), Advisory Committee Note. There is no basis for striking this exhibit.

With the exception of the sentence in paragraph 8 asserting that AAA New England provided the terms and conditions to plaintiffs, the content of paragraphs 8, 9, and 10 all falls well within the personal knowledge of Justice. As an assistant secretary at Disney Travel, he would be in a position to know whether Disney Travel provided the terms-and-conditions document to AAA New England and could describe the substance of that document. Those portions of his affidavit will not be struck.

The sentence asserting that "upon information and belief," the terms-and-conditions document was "provided to Plaintiffs" is not competent evidence that the document was actually

provided to plaintiffs, and it will not be considered for that purpose. (Justice Aff. ¶ 8). Its "upon information and belief" qualification clearly indicates that Justice does not have personal knowledge of that fact. Nonetheless, the sentence provides context to the affidavit, and need not be disregarded entirely. Accordingly, while the sentence adds little if any evidentiary weight, and will not be considered as evidence that plaintiffs actually received the document, it will not be struck.

For these reasons, plaintiffs' motion to strike three paragraphs of and an exhibit attached to the Justice affidavit will be denied.

**IV.** <u>**Forum-Selection Clause Analysis**</u>

The forum-selection clause at issue states, "Any dispute, claim, action or proceeding . . . arising out of or in connection with the packages and services and these Terms and Conditions . . . must be commenced and maintained exclusively in any court located in Orange County, Florida . . . ." It is preceded by a choice-of-law provision that states, "these Terms and Conditions shall be governed by the laws of the State of Florida, without giving effect to any principles of conflicts of law." (Sutherland Aff., Ex. A at 3).

Because this suit is based on diversity of citizenship, it raises the unsettled issue of whether to treat forum-selection clauses as substantive (and apply state law) or procedural (and apply federal law) under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See Huffington v. T.C. Group, LLC*, 2011 WL 676105, at *4 (1st Cir. Feb. 25, 2011); *Rivera*, 575 F.3d at 16. The Court need not reach that issue, however, because Massachusetts, Florida, and the federal courts all follow the common-law standard described by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). *Huffington*, 2011 WL 676105, at *4; *Doe v. Seacamp Ass'n*,

9

276 F. Supp. 2d 222, 224 (D. Mass. 2003); *Land O'Sun Mgmt. Corp. v. Commerce Indus. Ins. Co.*, 961 So.2d 1076, 1080 (Fla. Dist. Ct. App. 2007); *Haws & Garrett Gen. Contractors, Inc. of Fort Worth v. Panhandle Custom Decorators & Supply, Inc.*, 500 So.2d 204, 205 (Fla. Dist. Ct. App. 1986) ("[The Florida Supreme Court in] *Manrique* [*v. Fabbri*, 493 So.2d 437 (Fla. 1986)] essentially adopted the three-pronged test announced by the United States Supreme Court in *Bremen*.").

The threshold issue in interpreting a forum-selection clause is whether it is permissive or mandatory. *Huffington*, 2011 WL 676105, at *2; *Rivera*, 575 F.3d at 17. "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." *Rivera*, 575 F.3d at 17 (quoting 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3803.1 (3d ed.1998)). The language in the clause at issue here, which states that "any dispute . . . must be commenced and maintained . . . exclusively" within the selected forum, is clearly mandatory. *See Lambert v. Kysar*, 983 F.2d 1110, 1112 (1st Cir. 1993) (forum-selection clause stating "[i]n the event any action is brought to enforce [such] terms and conditions, venue shall lie exclusively in Clark County, Washington" was deemed "mandatory"); *Dorel Steel Erection Corp. v. Capco Steel Corp.*, 392 F. Supp. 2d 110, 115 (D. Mass. 2005) (citing *Lambert* for this proposition). This Court must therefore dismiss plaintiffs' claims if the forum-selection clause is enforceable.

Forum-selection clauses enjoy a presumption of enforceability that must be overcome by

the party challenging its validity. "Under *Bremen*, 'the forum clause should control absent a strong showing that it should be set aside,' and the party resisting enforcement bears the 'heavy burden' of demonstrating why the clause should not be enforced." *Huffington*, 2011 WL 676105, at *4 (quoting *Bremen*, 407 U.S. at 15, 17).

There are four bases on which a Court may find that a forum-selection clause is unenforceable:

(1) the clause was the product of "fraud or overreaching,"

(2) "enforcement would be unreasonable and unjust,"

(3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court," or

(4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."

*Id.* at *5 (quoting *Bremen*, 407 U.S. at 15, 18) (internal citations omitted).

The first basis "is triggered not by claims that the contract was induced by fraud but only by a focused showing . . . that 'the inclusion of that clause in the contract was the product of fraud or coercion.'" *Id.* (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)). Plaintiffs make no such claim here.

The second basis generally requires a showing of something more than mere inconvenience. *Id.* The fact that the clause is contained in a contract of adhesion is not enough.[5] As long as the wording in such a contract is explicit and reasonably clear, "its terms and conditions are binding on the parties." *Rivera*, 575 F.3d at 19; *see generally Carnival Cruise*

---

[5] A contract of adhesion is a contract "offered by the authoring party on a take it or leave it basis rather than being negotiated between the parties." *Rivera*, 575 F.3d at 20 n.7 (internal quotations omitted).

*Lines v. Shute*, 499 U.S. 585, 593-94 (1991) (adhesion contracts are permissible and even desirable where restricting the forum would protect party from litigation in multiple locations, dispel confusion among geographically dispersed customers, and reduce costs for consumers). Here, the wording of the clause is clear and the fact that it is a contract of adhesion is irrelevant. *See Rivera*, 575 F.3d 10 at 19-20.

Plaintiffs contend that the forum-selection clause was hidden in the package of materials received by them from Disney Travel, and that as a consequence they never read it. Citing *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861 (1st Cir. 1983), they assert that terms and conditions in an adhesion contract must be "reasonably communicative" of the fact that important clauses are contained therein. However, the "reasonable communicativeness" standard, and the accompanying two-part analysis described in *Shankles*, is the standard applicable to suits in admiralty subject to a special one-year statute of limitations. *See Muratore v. M/S Scotia Prince*, 845 F.2d 347, 350-51 (1st Cir. 1988) ("reasonable communicativeness" test applies to determination of whether a contractual limitation period contained in a passenger ticket is binding on a steamship passenger). Although *Shankles* and its progeny are relevant to the Court's consideration of reasonableness under *Bremen*, they are not controlling. Even under *Shankles*, moreover, the "inquiry into the passenger's possession of and familiarity with the ticket does not depend upon *actual* knowledge of the terms in the contract of passage, but focuses instead on the *opportunity* for such knowledge." *Lousararian v. Royal Caribbean Corp.*, 951 F.2d 7, 11 (1st Cir. 1991). Here, it is true that the forum-selection clause was located on the third page of a four-page document (although the relevant language was bolded), that it was part of a larger packet of materials, and that nothing outside the document pointed plaintiffs toward either the

document or the clause. However, "unreasonableness" in this context requires something more. *Huffington*, 2011 WL 676105, at *5 (second basis is "demanding" and must be associated with fraud, injustice, or strong public policy reasons); *Seacamp*, 276 F. Supp. 2d at 227 (adhesion contract was not unreasonable where no coercion alleged).

Plaintiffs also allege that "there is no evidence that they in fact received" the terms-and-conditions document containing the forum-selection clause. (Pl's. Opp. at 14). This is contrary to the record. According to William Sutherland's affidavit, AAA New England's records confirm that plaintiffs received documents that included, among other things, the terms and conditions. (Sutherland Aff. ¶¶ 4-6). Mrs. Noel's affidavit states as follows:

> I do recall that my husband and I did receive a package of documents from AAA after we made our final payment for the Disney vacation. My recollection is that this package contained many documents, including tickets to theme parks, our itinerary, and brochures. I did not see any warnings and/or instructions directing me to review the four page document entitled 'Terms and Conditions' or the forum selections clause contained in that document. I did not see this document until I reviewed Attorney Justice's Affidavit in July 2010.

(Noel Second Aff. ¶ 4). Taken together, the undisputed evidence shows that, although plaintiffs did not read the terms-and-conditions document, they did receive it. As a result, the second basis is not a grounds for declining to enforce the forum-selection clause.

The third basis is also inapplicable. The hardship caused by the move to a new forum must be much more than mere inconvenience; it must amount to "practical impossibility." *Huffington*, 2011 WL 676105, at *5. Plaintiffs (in the context of their contention that Massachusetts should retain personal jurisdiction) state that "defendant is in the best position to absorb and spread the cost of litigation" and that "[i]f this case were transferred to Florida, the plaintiffs would have to retain new counsel and travel to and from Florida for litigation related

13

matters[, which] would be grossly unjust." (Pl.'s Opp. at 15). The Court has no doubt that plaintiffs will be burdened by litigating in Florida. But absent more, it does not rise to the level of inconvenience required under the law that would permit the Court to disregard the forum-selection clause.

The fourth basis, that "enforcement would contravene a strong public policy of the forum in which the suit is brought," has no relevance here. "Ordinarily, a forum selection clause is respected . . . so long as the chosen forum will [] provide an *adequate* remedy." *Huffington*, 2011 WL 676105, at *6. Plaintiffs have presented no evidence that their common-law claims cannot be effectively litigated in Florida. Furthermore, Massachusetts has no special interest in having those claims litigated here. *Cf. Huffington*, 2011 WL 676105, at *5-6 (claims under Massachusetts statute penalizing fraudulent sale of securities in the Commonwealth had special relationship to that forum). Moreover, the accident giving rise to the claims occurred in Florida, and plaintiffs' case will likely make use of witnesses and other evidence in Florida. Thus, the fourth basis for declining to enforce the forum-selection clause is also inapplicable.

A final question remains as to whether defendant is subject to the forum-selection clause. Because Disney Travel drafted the forum-selection clause and contracted (through its agent, AAA New England) with plaintiffs, it is clearly bound by it. Disney Resorts, however, is the defendant. In Florida, courts have enforced contract terms, including forum-selection clauses, when "there exists a close relationship between [a] non-signatory and signatory [to a contract containing a forum-selection clause] and the interests of the non-signatory are derivative of the interests of the signatory." *Deloitte & Touche v. Gencor Indus.*, 929 So. 2d 678, 683 (Fla. Dist. Ct. App. 2006); *see also World Vacation Travel, S.A. v. Brooker*, 799 So. 2d 410, 412-13 (Fla. Dist. Ct. App.

2001). Federal courts within the First Circuit agree that when a corporate entity is so "closely related" that "it becomes foreseeable that it will be bound" by a forum-selection clause, the clause is enforceable against it. *Barletta Heavy Div., Inc. v. Erie Interstate Contrs., Inc.*, 677 F. Supp. 2d 373, 379 (D. Mass. 2009) (citing *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); *see also D.I.P.R. Mfg. v. Perry Ellis Int'l, Inc.*, 472 F. Supp. 2d 151, 154 (D.P.R. 2007).

Here, Disney Travel and Disney Resorts are subsidiaries of the same parent corporation, Disney Enterprises. Plaintiffs have submitted an affidavit testifying that they were not aware of the difference between Disney Resorts and Disney Travel employees during telephone calls with Disney representatives. (*See* Noel Aff. ¶ 7; *see also id.* ¶ 9 ("I do not know if there is a difference between 'Walt Disney World Co.', Walt Disney Parks and Resorts U.S., Inc. and/or the 'Walt Disney Company.'")). Their surreply memorandum asserts that there is a "undisputed agency relationship" between Disney Resorts and Disney Travel. (Pl.'s Surreply at 7). Furthermore, the fact that plaintiffs purchased a vacation package through Disney Travel for a stay at a resort owned by Disney Resorts confirms the close commercial relationship between the two entities. It clearly is foreseeable that Disney Resorts is subject to the forum-selection clause, just as is Disney Travel.

As Disney Resorts obtains business through Disney Travel and is part of the same overall Disney corporate structure, its interests are derivative of Disney Travel's interests. *See Deloitte & Touche*, 929 So. 2d at 693. The Court therefore concludes that Disney Resorts is subject to

the forum-selection clause at issue.[6]

Because plaintiffs and defendant are subject to the forum-selection clause, and because it is enforceable, the motion to dismiss under Fed. R. Civ. P. 12(b)(6), as converted to a motion for summary judgment, will be granted. The Court therefore need not consider whether it has personal jurisdiction over defendant. *See Seacamp*, 276 F. Supp. 2d at 228.

## IV. Conclusion

For the foregoing reasons, plaintiffs' motion to strike is DENIED. Defendant's motion to dismiss, as converted to a motion for summary judgment, is GRANTED without prejudice to the renewal of this action in an appropriate forum in Florida.

**So Ordered.**

                                                                /s/ F. Dennis Saylor  
                                                                F. Dennis Saylor IV  
Dated: March 31, 2011                                United States District Judge

---

[6] As plaintiffs have not contested the corporate interrrelationship between Disney Parks and Disney Travel (indeed, they contend that the two entities are agents of each other) and as Disney Resorts urges that this Court find it is subject to forum-selection clause, this conclusion is largely academic.